IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

TIERNEY V. TIERNEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KATHRYN ANN TIERNEY, APPELLEE,

V.

LAWRENCE WILLIAM TIERNEY, APPELLANT.

Filed June 18, 2019.    No. A-18-338.

Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Affirmed as modified.

Marsha E. Fangmeyer, of Knapp, Fangmeyer, Aschwege, Besse & Marsh, P.C., and Melodie T. Bellamy, Kearney County Attorney, for appellant.

John B. McDermott, of Shamberg, Wolf, McDermott & Depue, for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PER CURIAM.

INTRODUCTION

Lawrence William Tierney appeals from a decree of dissolution entered by the district court for Custer County, which decree dissolved his marriage to Kathryn Ann Tierney, divided the marital assets and debts, and ordered him to pay an equalization judgment to Kathryn of $139,412. Lawrence challenges the district court's classification and division of the marital estate as well as the district court's valuation of the marital corporation's bank accounts and real estate debts. We conclude the district court erred in its valuation and division of the marital estate, and we modify the district court's decree accordingly.

- 1 -

BACKGROUND

Lawrence and Kathryn were married in June 1980. They had two children during the marriage, who have since reached the age of majority. Throughout their marriage, Lawrence operated a ranch through his and Kathryn's jointly owned closely held corporation, Custer County Pastures. Kathryn taught school for approximately 30 years during her marriage to Lawrence. Lawrence and Kathryn separated in August 2015. Shortly thereafter, Kathryn filed a complaint for dissolution of marriage, and Lawrence filed an answer and cross-complaint in response.

The parties filed a stipulation on December 3, 2015, in which they agreed to be restrained from disposing of their personal property during the pendency of their divorce action, except in the usual course of business and for the necessities of life. The stipulation permitted the use of Custer County Pastures' checking account for paying "bills and expenses for cattle which are marital assets at this time" as well as "all the expenses related to the house, including gas, utilities, cell phones, and the [business credit card]." The stipulation allowed both Lawrence and Kathryn to withdraw $500 each month from the Custer County Pastures checking account as an officer's salary. They also agreed that they each would have temporary use of the family home. On June 28, 2016, however, Kathryn was awarded exclusive use of this home during the proceedings.

Trial was held on August 8, 2017. Kathryn and Lawrence testified as well as John Wurdeman, Kathryn's real estate appraiser, and Cyril Thoene, Lawrence's real estate appraiser.

The court received the parties' joint property statement, which divided the parties' assets and debts into categories. The asset categories included household furnishings and equipment; checking and savings accounts; automobiles and other vehicles; farm or business equipment, inventory, and supplies; real estate; as well as life insurance and retirement plans. The debt categories included mortgages or contracts on real estate, secured creditors, and unsecured creditors.

The joint property statement also described the real estate that the parties or Custer County Pastures owned, assigning a color to each tract. The red tract contained 286.46 acres; the pink tract contained 159.49 acres; the green tract contained 319.17 acres; and the yellow tract contained 557.87 acres. The parties did not agree on the number of acres the orange tract contained; Lawrence claimed it contained 250.92 acres while Kathryn claimed it contained 303.62 acres. The parties agreed that the marital house, located on the red tract, was valued at $105,000, but they disputed the values of the remaining tracts.

Wurdeman testified that he had appraised each tract individually based on its value on September 1, 2015, which was near when the complaint was filed. Wurdeman generally valued the land as grassland pasture, but he separately valued as cropland about 37 acres of tilled ground on which Lawrence grew triticale, a forage crop used for grazing calves and making hay. Wurdeman estimated the tracts had a total value of $3,150,000. He admitted, however, that the value of grassland had decreased by between 10 and 15 percent since September 2015. The court received Wurdeman's appraisal report into evidence.

Thoene testified that he valued the tracts as one approximately 1,500 acre parcel based on its value on March 7, 2017. His knowledge of ranch land sales led him to believe that the tilled ground did not add significant value to the parcel, namely because its size was small compared with the parcel as a whole. As a result, he valued all of the land as grassland. Further, Thoene did

not include the value of the marital house in his appraisal of the tracts. The court received Thoene's appraisal report into evidence, which report valued the land at $1,446 per acre or $2,275,000 in total (1,572.91 acres × $1,446 = $2,274,428).

The red tract was directly adjacent to the pink tract, and they were contiguous with other land Lawrence rented for his cattle operation. The red and pink tracts separated the orange, green, and yellow tracts from the other land Lawrence rented for his cattle operation. The orange, green, and yellow tracts were titled to Custer County Pastures, and the parties agreed that these tracts, as well as Custer County Pastures, were marital property. Although the red and pink tracts were titled to Lawrence and Kathryn jointly with rights of survivorship, the parties disputed whether these tracts were marital property due to the tracts' ownership history.

The red and pink tracts had been in Lawrence's family since 1948, and he was raised on them. In 1982, Kathryn and Lawrence signed a mortgage to purchase several tracts of land from Lawrence's mother, which tracts included the red and pink tracts. The mortgage was filed with the Custer County Register of Deeds on July 31, 1985. The consideration for the mortgage was "[a]ny amount which may accrue to $117,236 pursuant to an Agreement for the Sale of Real Estate and Annuity Agreement . . . ." These agreements are not included in the record; however, Lawrence testified that under the agreements, he and Kathryn were obligated to pay his mother $10 per acre of mortgaged land for the remainder of his mother's life.

Lawrence and Kathryn filed for bankruptcy in 1994. On June 28, 1994, near the time of the bankruptcy, the parties signed a warranty deed that conveyed the mortgaged land back to Lawrence's mother and discharged Lawrence and Kathryn's annuity obligation. This deed was recorded with the Custer County Register of Deeds at 3:25 p.m. Five minutes later, another warranty deed was recorded that conveyed the red and pink tracts from Lawrence's mother to Lawrence in consideration of "love and affection received." On April 10, 2008, Lawrence and Kathryn signed a quitclaim deed that conveyed the red and pink tracts to them as joint tenants with rights of survivorship, in consideration of "Correction of Title."

Kathryn testified that when she retired, she noticed the red and pink tracts were titled in Lawrence's name alone. Because she had been making payments on the marital house's remodel and because that house sat on the red tract, she asked Lawrence to sign a deed titling the tracts in his and her names jointly. Kathryn claimed that Lawrence told her the land should be titled to both of them jointly and that he agreed to sign the quitclaim deed correcting the title.

After she and Lawrence separated, Kathryn continued living in the marital house on the red tract. The red tract also contained a roping arena, corrals, a shop, and a barn as well as an old granary and an old bunkhouse. Because Kathryn desired to continue living in the marital house and to receive rental income, she requested that the court award her the red and pink tracts. She was willing to rent the land and necessary facilities to Lawrence for his use. She asked the court to award the land titled to Custer County Pastures to Lawrence. Kathryn admitted, however, that if Lawrence received the red and pink tracts, she was willing to separate the marital house from the remainder of the red tract so that she could continue living there.

At the time of trial, Kathryn was retired from teaching and worked in a part time position at a local bank. Kathryn was receiving retirement benefits from the Nebraska Public Employees Retirement System. The court received into evidence a statement of her monthly benefit as of

January 2016. Kathryn received a gross monthly payment of $2,276.37, and after federal and state income tax withholdings, her net monthly payment was $2,108.60.

Lawrence testified that he had worked as a rancher for his entire life. Although he had lived on the red and pink tracts for most of that time, at the time of trial he was living in a Broken Bow apartment. Both of the parties' adult children were involved in Lawrence's cattle operation, which involved purchasing cows, lightweight calves, and yearling cattle. Kathryn did not normally help with the cattle operation, but she did from time to time. Lawrence used all of the tracts of real estate for the ranching operation, and Lawrence also rented land from his mother and another family trust. In total, he operated on 2,900 acres.

Although Lawrence admitted the marital house on the red tract was marital property, he believed the red and pink tracts were nonmarital because his mother gifted them to him. In the event that the court found the red and pink tracts to be marital property, Lawrence asked the court to award those tracts to him, including the marital house, due to his use of and family history with those properties. Lawrence admitted that he could continue his operation by renting the red and pink tracts from Kathryn, although he testified that arrangement would be uncomfortable. Because he worked on the red tract daily, Lawrence asked to be awarded the marital house. At the time of trial, Lawrence lived 11 miles from his cattle operation and Kathryn lived 11 miles from her place of employment. The distance of his home from the ranching operation could cause difficulties during the wintertime or when an animal escapes.

Lawrence ultimately wished for his children to receive the red and pink tracts. Thus, if the court did not award the tracts to him, he proposed that the court place those tracts in a constructive trust. He and Kathryn would share the income and expenses from the trust during their lives, and they would each pay rent to the trust for the use of the land or house. Upon their deaths, the tracts would pass to their children.

When Kathryn refused to sign renewal documents for Custer County Pastures in March 2016, Lawrence began operating individually as "Larry Tierney." Custer County Pastures owed a long-term real estate debt to Custer Federal State Bank secured by the orange, yellow, and green tracts, and the payment on the debt was due yearly in November. While Custer County Pastures owed $129,617 on that real estate debt as of June 2015, it only owed $74,493 on the debt at the time of trial. Lawrence testified that Custer County Pasture's 2016 payment came from the profits of his individual cattle operation. The court received into evidence a copy of a check from Lawrence's separate checking account dated October 3, 2016. The check was written to "Custer Federal" for $21,363.68.

The parties disputed the value of Custer County Pastures' checking account, which Kathryn valued at $12,820 and Lawrence valued at $0. Lawrence testified that although the corporate checking account had $12,820 at the time of separation, he had used those funds to pay Custer County Pastures' operating costs, which included bills for gas, insurance, repairs on vehicles, feed, and utilities, including the house telephone. After paying those bills, there was "very little" money left in the corporate checking account. The parties also had a commodity account, which Kathryn valued at $15,000 and Lawrence valued at $0. Like the funds in the corporate checking account, Lawrence used the funds in the commodity account to pay for the corporate operating expenses. He believed the account should be discounted for the value of those corporate expenses. Lawrence

admitted to using an account from Producers Livestock Credit Corporation, which was listed on their joint property statement, to finance his individual operation after March 2016.

Lawrence's elderly mother lived in a Broken Bow long-term care facility. In the three years before trial, Lawrence had paid his mother $36,000 per year to help cover the cost of that facility. While he calculated this sum on the basis of $30 per acre of "her land," he testified that these payments were not an attempt to pay for that land. Instead, he felt the payments were "a moral issue."

On October 16, 2017, the district court entered a decree of dissolution. The court found all the real estate to be marital property and valued it at $1,446 per acre according to Thoene's appraisal. The court awarded the red and pink tracts, including the marital house, to Kathryn and the remaining real estate to Lawrence. The court valued and divided the parties' remaining assets and debts, which we discuss in further detail in our analysis below. The court found Kathryn's net share of the marital estate to be $1,225,006 and Lawrence's net share of the marital estate to be $1,416,682. To equalize the estate, the court directed Lawrence to pay Kathryn an equalization judgment of $95,838.

Both Kathryn and Lawrence filed motions for a new trial or to alter or amend the judgment. On December 11, 2017, the district court entered a modified decree of dissolution. The modified decree did not alter the division of the marital estate, but it changed the value of various items within that estate. The modified decree found Kathryn's net marital estate to be worth $1,176,884 and Lawrence's net marital estate to be worth $1,455,707. To equalize the estate, the court directed Lawrence to pay Kathryn $139,412.

On March 12, 2018, the district court entered an order on the parties' motions for a new trial or to alter or amend the judgment. The court denied both parties' request for a new trial and Lawrence's request to alter or amend the judgment. But the court granted Kathryn's request to alter or amend the judgment, citing its December 11, 2018, modified decree of dissolution.

Lawrence appeals.

## ASSIGNMENTS OF ERROR

Lawrence assigns, consolidated and restated, that the district court erred in (1) determining that the red and pink tracts were marital property, (2) awarding the red and pink tracts to Kathryn, (3) valuing two bank accounts based on the time of separation rather than the time of trial, (4) valuing the marital debt to Custer Federal State Bank at the time of trial rather than the time of separation, (4) doubly discounting Kathryn's pension for taxes, and (5) overruling his motion for a new trial or to alter or amend the decree.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Kashyap v. Kashyap*, 26 Neb. App. 511, 921 N.W.2d 835 (2018). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.*

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. *Onstot v. Onstot*, 298 Neb. 897, 906 N.W.2d 300 (2018). However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

*District Court Did Not Err in Finding Red and*
*Pink Tracts Were Marital Property.*

Lawrence assigns that the district court erred in concluding the red and pink tracts were marital property. He argues that his mother gifted the tracts to him alone by warranty deed in 1994.

The purpose of a property division is to distribute the marital assets equitably between the parties. Neb. Rev. Stat. § 42-365 (Reissue 2016). Equitable division of property is a three-step process: (1) classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage; (2) value the marital assets and marital liabilities of the parties; and (3) calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Cook v. Cook*, 26 Neb. App. 137, 918 N.W.2d 1 (2018).

As a general rule, all property accumulated and acquired by either party during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Westwood v. Darnell*, 299 Neb. 612, 909 N.W.2d 645 (2018). Such exceptions include property accumulated and acquired through gift or inheritance. *Id.* The Nebraska Supreme Court, however, has provided that property acquired by gift or inheritance is considered part of the marital estate when

> both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or received by way of gift or inheritance, or the spouse not owning the property prior to the marriage or not receiving the inheritance or gift has significantly cared for the property during the marriage.

*Van Newkirk v. Van Newkirk*, 212 Neb. 730, 733, 325 N.W.2d 832, 834 (1982), *abrogated on other grounds, Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017). See, also, *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012); *Nygren v. Nygren*, 14 Neb. App. 1, 704 N.W.2d 257 (2005). The burden of proof to show that property is nonmarital remains with the person making the claim. *Westwood, supra*.

In 1982, Lawrence and Kathryn signed a mortgage on several tracts of Lawrence's mother's land, which included the red and pink tracts. The mortgage was made in consideration of an agreement for the sale of real estate and annuity agreement between Lawrence, Kathryn, and Lawrence's mother. While these agreements are not in our record, Lawrence testified that he and Kathryn were obligated to pay his mother $10 per acre of mortgaged land for the remainder of his mother's life. Lawrence did not present evidence about how this real estate was titled at the time the mortgage was signed. However, in 1994 Lawrence and Kathryn conveyed the property

described in the mortgage by warranty deed to Lawrence's mother, so the property was presumably titled jointly to Lawrence and Kathryn prior to the execution of this warranty deed. The record does not contain evidence about how much money Lawrence and Kathryn had paid Lawrence's mother under the agreements at the time they conveyed the mortgaged land back to Lawrence's mother. Nevertheless, if the parties paid $10 per acre for each year between 1982 and when their liability under the agreements was released in 1994, they would have paid over $53,000 under the agreement with respect to the 446 acres contained in the red and pink tracts ($10/acre × 446 acres × 12 years = $53,520). On the same day that Lawrence and Kathryn signed the warranty deed conveying the real estate to Lawrence's mother, she reconveyed the red and pink tracts by warranty deed back to Lawrence alone. The deed provided that she conveyed the tracts to Lawrence, "in consideration of love and affection received."

Lawrence and Kathryn lived in the marital house on the red tract throughout these conveyances, and the parties agree that the house is marital property. The parties obtained a loan in the sum of $127,000 to remodel the house and this loan was paid during the marriage. In 2008, Lawrence and Kathryn signed a quitclaim deed, which granted the red and pink tracts to them jointly with rights of survivorship, in consideration of "Correction of Title." Although not determinative of whether the tracts are marital property, the quitclaim deed titling the red and pink tracts in Kathryn and Lawrence's name lends support to the conclusion that those tracts were marital in character. See *Becher v. Becher*, 24 Neb. App. 726, 897 N.W.2d 866 (2017), *reversed in part on other grounds* 299 Neb. 206, 908 N.W.2d 12 (2018).

Lawrence continued the cattle operation on both the red and pink tracts throughout the marriage. The use of this land did not change during the time the parties held the property prior to the 1994 conveyance to Lawrence's mother, after she immediately reconveyed the property to Lawrence, or after the 2008 correction of title. All of the assets of the cattle operation conducted by Custer County Pastures were acquired during the marriage and were considered marital property. The parties jointly paid the debts associated with the real estate and the cattle operation during the marriage. Thus, Kathryn contributed to the operation of the red and pink tracts.

The trial court determined that Lawrence did not sustain his burden of proving the red and pink tracts were nonmarital property. Based upon our de novo review of the record, we cannot conclude this determination was an abuse of discretion.

*District Court Erred in Awarding*
*Red and Pink Tracts to Kathryn.*

Lawrence next assigns that the district court erred in awarding the red and pink tracts to Kathryn.

The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). As a general rule, in a marital dissolution action a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). Thus, we analyze whether the district court's award of the red and pink tracts to Kathryn was fair and reasonable.

Lawrence argues that the district court should have awarded the red and pink tracts to him because those tracts had been in his family since 1948 and because he intends to pass those tracts to his children. Lawrence asserts the district court should have separated the house on the red tract from the facilities necessary to operate his cattle operation, awarding the house to Kathryn and the facilities to him. To equalize the division of the marital estate, he asserts the court should have awarded Kathryn the green tract, which does not contain necessary facilities and to which he has no sentimental attachment.

Lawrence claims the red tract contains facilities without which he would be "unable to successfully and economically continue" his operation. Brief for appellant at 22. Kathryn indirectly acknowledged that the facilities on the red tract were necessary to Lawrence's operation as she testified that she would allow Lawrence to rent the facilities back from her. Although Lawrence admitted that it would be possible for him to continue his operation by leasing those facilities from Kathryn, we find no justification in the record for this division as it would force the parties into a business relationship after the divorce decree.

Lawrence compares the present case to the Nebraska Supreme Court's decision in *Snow v. Snow*, 190 Neb. 655, 211 N.W.2d 719 (1973). In that case, the trial court divided the marital farm and ranch land between the husband and wife, awarding noncontiguous tracts to the husband, who worked as farmer and rancher, and other tracts to the wife. On appeal, the Nebraska Supreme Court held that awarding the husband noncontiguous tracts of land inhibited his ability to make an income from that land because dividing the land into noncontiguous tracts was "somewhat less useful and economic than would be [dividing] the same amount of land into a contiguous tract." *Id.* at 657, 211 N.W.2d at 721. As a result, the court modified the divorce decree to award the husband contiguous tracts that would better allow him to continue his farming and ranching activities, as well as pay his alimony obligation to the wife. *Snow, supra.*

We agree with Lawrence that the district court's award of the red and pink tracts to Kathryn needlessly interferes with his ability to continue the cattle operation. The red and pink tracts are situated in the center of the tracts Lawrence uses to feed and pasture his livestock. They contain the barn, other outbuildings, and equipment used in the operation. We find the district court abused its discretion in awarding Kathryn the red and pink tracts.

Lawrence argues that a feasible alternative would be to award Kathryn the green tract, which is also income-producing pasture ground. We agree. Thus, we modify the dissolution decree to award the red and pink tracts to Lawrence--with the exception of the house, which was awarded to Kathryn--and to award the green tract to Kathryn.

*District Court Abused Its Discretion in Failing*
*to Consider Marital Expenses That Drained*
*Custer County Pastures' Bank Accounts.*

Lawrence next assigns that the district court erred in valuing two bank accounts at the time of separation rather than at the time of trial. Lawrence asserts that the record shows he spent $27,820 from these accounts during the pendency of the divorce on marital expenses related to Custer County Pastures and maintaining other marital property. We agree.

As a general principle, the date upon which a marital estate is valued should be rationally related to the property composing the marital estate. The date of valuation is reviewed for an abuse of the trial court's discretion. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

In the parties' joint property statement, Kathryn's valued Custer County Pastures' checking account at Custer Federal State Bank at $12,820, and she valued the Custer County Pastures' commodity account at $15,000. The parties agreed in their stipulation that the Custer County Pastures' accounts could be used for expenses related to that business, for expenses related to the house, and to pay each party $500 per month. There is no evidence in the record that the parties did not follow this agreement. On the contrary, Lawrence specifically testified that he used the money remaining in these accounts when the parties separated to pay for Custer County Pastures' expenses, including utilities, insurance, taxes, and feed for cattle.

Kathryn argues that Lawrence conducted the cattle operation as his individual cattle operation after they separated, and thus, his use of the Custer County Pastures' bank accounts was not marital. Lawrence presented evidence that these two accounts were used to pay the marital expenses for the cattle operation and house utilities pursuant to the parties' stipulation until Kathryn refused to sign the renewal documents for Custer County Pastures in March 2016, at which time he began to operate individually. Lawrence testified that he used funds from the parties' Producers Livestock Credit Corp. account to maintain his individual cattle operation after the parties' separated, and not Custer County Pastures' bank accounts. Kathryn's property statement assigned a $24,903.16 value to the Producers Livestock Credit Corp. account, and Lawrence does not contest on appeal that Kathryn's value was correctly included in the marital estate. But contrary to Kathryn's assertion, the record contains no evidence that Lawrence used funds from Custer County Pastures' accounts for his individual cattle operation.

After a de novo review of the record, we find that the district court abused its discretion in failing to value the Custer County Pastures accounts at the time of trial, after the marital expenses Lawrence paid from those accounts were paid. Accordingly, we reduce the value of the parties' checking and savings accounts by $27,820 to account for these expenses.

*District Court Abused Its Discretion in Failing*
*to Account for Personal Payments Lawrence*
*Made to Parties' Real Estate Debt.*

Lawrence assigns that the district court erred in valuing the marital debt to Custer Federal State Bank at the time of trial rather than the time of separation. The value of Lawrence and Kathryn's long-term debt with Custer Federal State Bank was $129,617.77 at the time of separation. At the time of trial, however, the parties had paid this debt down to $74,493. Lawrence testified that he used $21,363.68 of his own funds to pay down this debt, and he offered a check from his separate checking account for that amount made out to "Custer Federal."

A marital debt is one incurred during the marriage and before the date of separation by either spouse or both spouses for the joint benefit of the parties. *Cook v. Cook*, 26 Neb. App. 137, 918 N.W.2d 1 (2018). The real estate debt on Custer County Pastures' land was incurred during the marriage and before the parties separated for their joint benefit. The record shows that Lawrence used at least $21,364.68 of his personal funds to pay down this debt. Therefore, we conclude that the district court abused its discretion in failing to account for the $21,364.68 that

- 9 -

Lawrence paid from his individual cattle operation after the parties' separation to satisfy this debt. We modify the dissolution decree to account for the payment.

*District Court Abused Its Discretion in Doubly Discounting Kathryn's Pension for Taxes.*

Lawrence next assigns that the district court erred in doubly discounting Kathryn's pension for taxes. In dissolution proceedings, the trial court has broad discretion in valuing and dividing the parties' retirement accounts. *Ging v. Ging*, 18 Neb. App. 145, 775 N.W.2d 479 (2009).

Kathryn did not contest at trial that her entire pension was marital property. The only evidence offered as to this pension's value was a statement from the Nebraska Public Employees Retirement Systems, which showed that Kathryn received a gross monthly benefit of $2,276.37. That benefit was reduced to a net monthly payment of $2,108.60 after withholdings for federal and state income taxes. Kathryn presented no other evidence about additional taxes, if any, that she would incur on her pension. Multiplying the $2,108.60 monthly benefit by 14 years, which the court stated was her life expectancy, the court found the present value of Kathryn's pension to be $354,144. After considering Kathryn's and Lawrence's motions for a new trial or to alter or amend the decree, the district court entered a modified decree of dissolution that reduced the pension's present value to $301,022 to account for a 15 percent tax.

The record contains no evidence to support the reduction in value for tax consequences. See *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995) (taxes could be considered in valuation of retirement account when expert testified about prospective taxes). Moreover, the court's original valuation of the pension already took into account the federal and state income taxes being withheld from the pension benefits. As a result, we conclude the district court abused its discretion in reducing the value of Kathryn's pension. We modify the decree to value the pension at $354,144.

*We Modify Equalization Judgment.*

As we discuss above, we conclude the district court erred in its valuation of the marital property and its division of the marital estate. Having resolved Lawrence's assignments of error, we provide the following division of the parties' assets and debts:

| Assets | Kathryn's Amount | Lawrence's Amount |
|---|---|---|
| Household Furnishings and Equipment | $6,365.00 | $2,000.00 |
| Checking and Savings Accounts | $18,745.00 | $29,762.00 |
| Automobiles and Other Vehicles | $5,200.00 | $39,025.00 |
| Farm or Business Equipment, Inventory & Supplies | $9,300.00 | $248,074.00 |
| Real Estate | $566,519.82 | $1,812,908.04 |
| Life Insurance and Retirement | $87,711.00 | $31,179.00 |
| Pension | $354,144.00 | $0.00 |
| **Total Assets** | **$1,047,984.82** | **$2,162,948.04** |

|  | Kathryn's | Lawrence's |
| Liabilities | Amount | Amount |
| Mortgages or Contracts on Real Estate | $0.00 | ($95,856.68) |
| Secured Creditors | $0.00 | ($434,706.00) |
| Unsecured Creditors | $0.00 | ($43,983.00) |
| **Total Liabilities** | **$0.00** | **($574,545.68)** |
| **Net Estate** | **$1,047,984.82** | **$1,588,402.36** |
| Difference Between Lawrence's Net Estate and Kathryn's Net Estate | | **$540,417.54** |
| Equalization Judgment Lawrence Owes to Kathryn | | **$270,208.77** |

Based on the balance sheet above, the total value of the marital estate is $2,636,387.18, and the value awarded to Kathryn is $1,047,984.82. An equal distribution requires Lawrence to pay Kathryn $270,208.77.

*We Need Not Address Lawrence's Assignment That District*
*Court Erred in Failing to Grant His Motion For*
*New Trial or to Alter or Amend Judgment.*

Lawrence also assigns that the district court erred in failing to grant his motion for a new trial or to alter or amend the judgment. Because his motion essentially encompassed his other appellate assignments of error, we need not address it. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Fales v. Fales*, 25 Neb. App. 868, 914 N.W.2d 478 (2018).

CONCLUSION

The district court did not abuse its discretion in classifying the red and pink tracts as marital property; however, it did abuse its discretion in awarding the red and pink tracts to Kathryn. We modify the dissolution decree to award Lawrence the red and pink tracts and to award Kathryn the green tract as well as the marital house. The district court erred in its valuation of the parties' bank accounts and marital debt. As a result, we modify the district court's decree, ordering Lawrence to pay Kathryn $270,208.77.

AFFIRMED AS MODIFIED.