MUTUAL OF OMAHA, APPELLEE, V. RAYMOND BROUSSARD, APPELLANT.

448 N.W.2d 600

Filed December 1, 1989.    No. 89-190.

Glenn A. Pettis, Jr., for appellant.

Melvin C. Hansen and Kevin J. Dostal, of Hansen, Engles & Locher, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Mutual of Omaha brought this action in the Nebraska Workers' Compensation Court naming its employee Raymond Broussard as the defendant. Plaintiff sought a determination of the rights and liabilities of the parties resulting from an alleged accident occurring on November 25, 1985. From a determination by that court on rehearing that the defendant was not entitled to any further benefits, Broussard has appealed. We affirm.

On November 25, 1985, while in a bent-over position attempting to slide or push a box of computer listings weighing approximately 100 pounds, Broussard experienced sharp pains in his lower back and legs. The incident occurred at Mutual of Omaha during the course of Broussard's employment as a research mathematician. Broussard was earning an average weekly wage of $337.34 and was working 40 hours a week.

Broussard has a history of back problems. The first injury to his back occurred in June 1978 while he was serving in the National Guard as a medic. As Broussard was assisting in the unloading of a patient from an ambulance, another medic dropped her part of the litter. He caught the patient, taking the

full brunt of the weight on his shoulders and lower back muscles. He felt a sharp pain in the lower back radiating down both legs, reported the incident, and was treated with decreased activity.

On January 8, 1983, again while serving in the National Guard, Broussard hurt his back. On this occasion, Broussard injured his back lifting a table while setting up a classroom. He reported the incident and received treatment consisting of medication, bed rest, and heat. Broussard states that it took about 3 months to get over the residuals of this injury.

On August 7, 1983, another incident of back strain occurred in connection with his military service. Broussard was giving a training exercise as part of a physical training session. While doing trunk twisters, an exercise requiring a person to lie on one's back, place one's legs into the air, and move the legs at 180° angles from side to side, he again suffered back pain. He reported the incident and received medication and bed rest. The effects of this injury lasted only a couple of days.

On August 4, 1984, there was another episode of back pain. Broussard was helping his wife unload clothes from the washer into the dryer when the injury occurred. He went to a Veterans' Administration (VA) hospital, received medication to last 4 or 5 days, and underwent physical therapy for a couple of months.

Found in the record is a VA medical certificate dated September 5, 1984. That document describes treatment for back and leg pain, noting that Broussard had painted two rooms prior to the onset of the constant pain. The diagnosis was recurrent lower back strain.

On October 2, 1984, Broussard requested the VA provide him a note stating that he was unable to return to military duty because of back problems.

In March of 1985, Broussard sustained another back injury while playing golf. A Dr. Horrocks treated him for this injury. The medical record for this treatment states that Broussard has "a 9 year history of disc disease, primarily involving radiculopathy on the right down the proximal posterior leg. Probably representing compression at L-5-S-1."

There is a notation in his medical records dated May 21, 1985, in response to a reevaluation of his back pains. That entry

notes lower back pain for 10 years and that the patient still feels pain if he twists his body and is otherwise normal, with no recent injury.

In July 1985, Broussard and his wife moved some railroad ties in their yard. The next morning he awoke with excruciating pain and went to a hospital emergency room. The diagnosis made by the treating physician at the hospital was "acute low back strain - Poss. disc syndrome." He was given medication, treated with bed rest, and told to see his family physician, and the following week received an injection of Kenalog and Xylocaine.

Broussard's wife described another incident of back pain occurring during the summer of 1985. She stated that Broussard was "unloading" in their apartment, called her for help, and complained of muscular pain in his back.

During this period of time, Dr. Horrocks had noted in his records on at least two occasions the possibility of chymopapain injections. A CT scan was taken of the lumbar spine around July 15, 1985, which scan was normal.

Following the November 25, 1985, incident at work, Broussard was treated by a Dr. Wampler, who noted that the incident of moving the box was not the only cause of Broussard's condition and that his past history of muscular back injuries was a contributing cause.

Broussard's family physician recommended that Broussard see Dr. Ray, an orthopedist. Both a CT scan and an MRI were conducted. The CT scan was normal; however, the MRI suggested disk herniation at the L-5 level. A chymopapain injection was done on February 11, 1986. However, that treatment was not successful. In April 1986, a Dr. Hacker performed a microdiskectomy, which gave Broussard relief from the pain caused by the chymopapain injection, but did not give him complete relief.

Broussard's lawyer then referred Broussard, in December 1986, to Dr. Fitzgibbons, an orthopedist. In his report, Dr. Fitzgibbons detailed the medical treatment given Broussard following the alleged incident of November 25, 1985. The only reference to the recurring nature of Broussard's back problem existing prior to that date was a statement that "[i]n 1978,

apparently he had a history of some back problem, but he recovered from this apparently reasonably well." Finally, the physician concluded with this comment: "In regard to the cause of the patient's symptoms, they *appear* to be caused by the incident at work on the 23 November 1984 [sic]." (Emphasis supplied.) It should be noted that Dr. Fitzgibbons on two other occasions in this report provided dates which were off by a period of 1 year. Dr. Fitzgibbons estimated Broussard's impairment "is going to be somewhere between 10 and 20 percent of the body as a whole."

Broussard has also undergone examinations in connection with his military service and request for disability benefits, receiving a 20-percent service-related disability rating and discharge from military service.

Following a rehearing before a three-judge panel of the compensation court, an order of dismissal was entered. As a part of that order a finding was made that Broussard had testified to incidents involving significant injuries to his back starting in 1978 and again in 1983, 1984, and 1985, which imposed upon Broussard an enhanced burden of proof.

The court went on to point out that Dr. Fitzgibbons was the only medical expert who suggested that the symptoms which he found on December 16, 1986, "appear to be caused by the incident at work of November 23, 1984 when he bent over to push a box at Mutual of Omaha." (Emphasis supplied.) However, the court also pointed out that the only history of prior injury which Dr. Fitzgibbons had was the 1978 military injury from which, according to the physician, Broussard apparently had recovered reasonably well.

Accordingly, the compensation court, citing *Riha v. St. Mary's Church & School, Inc.*, 209 Neb. 539, 308 N.W.2d 734 (1981), stated that the value of the opinion of an expert is no stronger than the facts upon which it is based and then concluded: "The medical evidence presented by the defendant is not sufficient to sustain his burden of proof and his claim for disability and all other benefits for which he may have been entitled . . . should be dismissed."

The findings of fact made by the Workers' Compensation Court after rehearing have the same force and effect as a jury

verdict in a civil case and will not be set aside unless clearly wrong. Neb. Rev. Stat. § 48-185 (Reissue 1988); *Schlotfeld v. Mel's Heating & Air Conditioning, ante* p. 488, 445 N.W.2d 918 (1989). In testing the sufficiency of evidence to support the findings of fact made by the Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. *LaPage v. City of Lincoln, ante* p. 576, 446 N.W.2d 738 (1989); *Schlotfeld, supra.* Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of the facts for that of the Workers' Compensation Court. *LaPage v. City of Lincoln, supra.* As the trier of fact, the Workers' Compensation Court is the sole judge of witnesses and the weight to be given to testimony. *Id.* Issues of causation are for determination by the fact finder. *Hamer v. Henry,* 215 Neb. 805, 341 N.W.2d 322 (1983).

In a workers' compensation case, the burden is on the claimant employee to prove by a preponderance of the evidence that the alleged injury or disability was caused by the employee's employment and that such disability was not the result of the progression of the employee's condition present before the employment-related incident alleged as the cause of such disability. See *Fees v. Rivett Lumber Co.,* 228 Neb. 617, 423 N.W.2d 483 (1988).

There is no presumption from the mere occurrence of an unexpected unforeseen injury that the injury was in fact caused by the employment. Neb. Rev. Stat. § 48-151 (Reissue 1988); *Gilbert v. Sioux City Foundry,* 228 Neb. 379, 422 N.W.2d 367 (1988). The presence of a preexisting disease or condition enhances the degree of proof required to establish that the injury arose out of and in the course of employment. *Fees v. Rivett Lumber Co., supra.* See, also, *Spangler v. State, ante* p. 790, 448 N.W.2d 145 (1989).

The key to a determination of this appeal is the expert testimony.

"[U]nless the character of an injury is objective, that is, where its nature and effect are plainly apparent, then it is a subjective condition necessitating expert testimony; and

that *where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science.* Such a question must necessarily be determined from testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries. The employee must show by competent medical testimony the causal connection between the alleged injury, the employment, and the disability.

(Emphasis in original.) *Kingslan v. Jensen Tire Co.*, 227 Neb. 294, 298-99, 417 N.W.2d 164, 167 (1987).

The compensation court expressly considered the statements of Drs. Wampler and Fitzgibbons. In respect to Dr. Fitzgibbons' statement, the court noted the previously mentioned deficiencies regarding the extent of his knowledge as to the history of Broussard's difficulties relating to his back. The court went on to correctly cite *Riha, supra,* for the proposition of law holding the value of the opinion of an expert is no stronger than the facts upon which it is based. This led to the conclusion that Broussard had failed to satisfy his burden of proof.

This court has consistently held that the trier of fact is not required to take the opinion of experts in regard to causal connection between alleged injury and disability as binding upon it. *Tatara v. Northern States Beef Co.*, 230 Neb. 230, 430 N.W.2d 547 (1988); *Randall v. Safeway Stores*, 215 Neb. 877, 341 N.W.2d 345 (1983).

However, Broussard contends that the statement of Dr. Fitzgibbons is binding and points to *Mann v. City of Omaha*, 211 Neb. 583, 319 N.W.2d 454 (1982), in support of this contention.

*Mann* is clearly distinguishable. In that case there was no question as to the credibility given to the testimony of two doctors who testified that stress was the cause of the heart attack for which the claimant, a police officer, sought benefits.

In the instant case the testimony of Dr. Fitzgibbons was not based on firsthand knowledge and was based on an incomplete

history which omitted several serious back episodes between 1978 and Broussard's alleged November 25, 1985, injury. The extensive preexisting condition of acute back strains of Broussard received only a cursory reference to a single injury that occurred in 1978 from which, the doctor states, Broussard recovered "apparently reasonably well." That, of course, was not accurate. Additionally, the conclusion of causation was not expressly made with a reasonable degree of medical certainty.

In summary, Broussard has not sustained his enhanced burden of proof with sufficient medical testimony on the issue of causation. A workers' compensation award cannot be based on mere possibility or speculation, and if an inference favorable to Broussard can only be reached on that basis, then he cannot recover. *McMichael v. Lancaster Cty. Sch. Dist. 001, ante* p. 603, 447 N.W.2d 35 (1989).

Considering these deficiencies and being mindful that credibility and the weight to be given testimony, and the issue of causation generally, are all matters of fact to be determined by the compensation court sitting as the finder of fact, *Tatara, supra*, we cannot say that the decision of the compensation court was clearly wrong.

The judgment of the compensation court is affirmed.

AFFIRMED.