CRAIG D. WAY, APPELLANT, V. HENDRICKS SODDING AND LANDSCAPING, INC., ET AL., APPELLEES.
462 N.W.2d 99

Filed November 2, 1990.    No. 90-134.

Douglas McArthur for appellant.

Dallas D. Jones and Jill Gradwohl Schroeder, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This is an appeal in a proceeding under the Workers' Compensation Act.

The plaintiff, Craig D. Way, was injured in an accident on October 18, 1986, which arose out of and in the course of his employment as a laborer by the defendant Hendricks Sodding and Landscaping, Inc. The accident occurred when the plaintiff cut his right leg above the knee while using a powersaw to cut a railroad tie. As a result of this injury, the plaintiff was temporarily totally disabled, incurred medical and hospital expenses, and sustained a 20-percent permanent disability to his right leg. The plaintiff has been paid compensation for the October 18, 1986, injury to his right leg, and there is no issue at this time as to the compensation due the plaintiff for that injury.

In his petition, filed on December 21, 1988, the plaintiff alleged that the weakened condition of his right leg resulted in chronic lumbar strain due to the additional stress exerted on his lower back, which resulted in temporary total disability and permanent partial disability to the body as a whole.

After the hearing before a single judge of the compensation court, the plaintiff recovered an award in which the court found that the plaintiff was still temporarily totally disabled from the accident of October 18, 1986. The court further found that the plaintiff had suffered a further back injury as a result of an accident arising out of and in the course of his employment by the defendant Hendricks, which entitled the plaintiff to compensation for permanent partial disability to the body as a whole when he reached maximum medical improvement.

On rehearing, the three-judge panel found that the plaintiff was entitled to temporary total disability payments for his leg injury in the amount of $181.56 per week from October 19, 1986, to April 19, 1987, from May 18, 1987, to July 15, 1987, and from December 8, 1987, to April 19, 1988 (a total of 53⁵/₇

weeks); that the defendants should pay the plaintiff's medical expenses and continue to provide future medical and hospital care for plaintiff's leg injury; that plaintiff's evidence failed to establish that he had suffered a back injury as a result of an accident arising out of and in the course of his employment by the defendants, but that instead, the plaintiff's back injury resulted from a degenerative preexisting back condition; and that no attorney fees or costs should be assessed against the defendants. From that award, the plaintiff has appealed.

The plaintiff contends that the compensation court erred in modifying the original award and by failing to find that his current back condition was causally related to his employment. The principal issue in this appeal is whether the plaintiff's back condition arose out of and in the course of his employment.

In testing the sufficiency of the evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. *Canas v. Maryland Cas. Co., ante* p. 164, 459 N.W.2d 533 (1990); *Snyder v. IBP, inc.,* 235 Neb. 319, 455 N.W.2d 157 (1990).

In a workers' compensation case, the claimant must prove by a preponderance of the evidence that his claimed disability was caused by an accident arising out of and in the course of employment. *Mutual of Omaha v. Broussard*, 233 Neb. 916, 448 N.W.2d 600 (1989); *Spangler v. State*, 233 Neb. 790, 448 N.W.2d 145 (1989); *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988).

The findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside on appeal unless clearly erroneous. Neb. Rev. Stat. § 48-185 (Reissue 1988); *Fenster v. Clark Bros. Sanitation*, 235 Neb. 336, 455 N.W.2d 169 (1990); *Knowlton v. Airport Transportation Co.*, 235 Neb. 96, 454 N.W.2d 278 (1990); *Brazee v. City of Lincoln*, 234 Neb. 680, 452 N.W.2d 529 (1990). The issue in regard to causation of an injury or disability is one for determination by the fact finder, whose findings will not be set aside unless clearly wrong. *Canas v. Maryland Cas. Co., supra*; *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408

N.W.2d 280 (1987); *Masters v. Iowa Beef Processors*, 220 Neb. 835, 374 N.W.2d 21 (1985).

Since the compensation court on rehearing found that the plaintiff had failed to establish by a preponderance of the evidence that his back condition was the result of an injury caused by an accident which arose out of and in the course of his employment by the defendant Hendricks, the issues are whether the evidence establishes that the finding of the compensation court was clearly wrong, whether the evidence compels a finding that the plaintiff's back was injured as the result of an accident arising out of and in the course of his employment by Hendricks, and whether the plaintiff is entitled to compensation for his alleged back injury as a matter of law.

The record in this case shows that on October 18, 1986, while in the employment of the defendant Hendricks, the plaintiff sustained a laceration across his right thigh while he was cutting railroad ties with a powersaw. As a result, the plaintiff underwent surgery, and thereafter rehabilitation, to repair the laceration to the quadriceps muscle of his right leg.

The plaintiff claims that the injury to his right leg caused him to alter his normal walking gait, which in turn put stress on his lower back and consequently aggravated a lower back injury which he suffered prior to the leg injury of October 18, 1986. Further, the plaintiff claims that his back condition was aggravated by work activities he performed in the course of his employment by the defendant Hendricks.

The record discloses that prior to the accident on October 18, 1986, the plaintiff experienced back pain while in the employ of the defendant Hendricks. On September 16, 1984, the plaintiff was fixing a tire at Hendricks when he felt a sharp pain in his lower back. As a result, he consulted Dr. Homer Wall, a chiropractor. Dr. Wall recommended massage, hotpacks, and electrostimulation as treatment. The plaintiff received two treatments and did not again complain of back pain until an incident during physical therapy on the "Cybex machine" in February 1987.

The plaintiff testified that on February 20, 1987, while rehabilitating his right leg, he began to suffer lower back pain. His treating physician, Dr. Donald Walla, an orthopedic

surgeon, attributed the back pain to a lumbar strain. Dr. Walla recommended that plaintiff "back off" on the right leg rehabilitation and instead receive therapy for his back with heat, ultrasound, and massage.

On April 16, 1987, after weeks of therapy, Dr. Walla declared plaintiff's lumbar strain resolved. Dr. Walla also determined that plaintiff had 80 percent strength in his right leg and, as a result, authorized him to resume his job at Hendricks, subject to several restrictions. The restrictions limited the plaintiff's bending, squatting, kneeling, and driving of a "CAT machine."

On May 12, 1987, plaintiff returned to Dr. Walla's office, complaining of leg problems. Dr. Walla found that plaintiff's lumbar strain remained asymptomatic, but discovered evidence of right thigh atrophy. Due to the right thigh atrophy, Dr. Walla recommended that plaintiff stay off work indeterminately and undergo Cybex strengthening and testing weekly.

On June 11, 1987, Dr. Walla again authorized plaintiff to resume his job at Hendricks, subject to restrictions on his bending, lifting, jumping, and carrying. Plaintiff returned to his job on July 16, 1987, and remained there until December 7, 1987, when he again experienced problems with his right leg. Dr. Walla subsequently recommended that the plaintiff stay off work.

On March 28, 1988, Dr. Walla determined that plaintiff had reached maximum medical improvement. Dennis Derr, a rehabilitation consultant with Eischen Rehabilitation Services, made a written request upon Dr. Walla to rate plaintiff's right leg to determine his permanent partial disability. Dr. Walla responded to Derr's request by noting that a permanent partial impairment could be given to plaintiff, since he had completed his healing and rehabilitative period. Thus, Dr. Walla assigned a permanent impairment of 20 percent to plaintiff's right lower extremity.

On April 20, 1988, plaintiff returned to a truck-driving job at Hendricks. The job required no lifting and complied with Dr. Walla's assigned physical activity level. In this position, plaintiff merely had to push a clutch pedal on a tractor or dump truck, which required an estimated 12 to 15 pounds of pushing from the left leg, and had to push the brake and accelerator,

which required minimal pushing from the right leg.

Plaintiff testified that on May 1, 1988, while driving a dump truck for Hendricks, he slammed on the brakes and experienced lower back pain radiating through the buttock into the right thigh area. After this alleged incident, the plaintiff never returned to work at Hendricks. He contends that the alleged May 1, 1988, braking incident (and/or an alleged May 2, 1988, truck-exiting incident) was a work-related activity which aggravated his preexisting back condition and caused his present temporary total disability.

Dr. Walla testified by deposition that on May 2, 1988, the plaintiff visited his office, complaining of right leg and lower back pain. Apparently, plaintiff never described to Dr. Walla the alleged May 1, 1988, braking incident or the alleged May 2, 1988, truck-exiting incident, because Dr. Walla made absolutely no mention of either event in his records. Dr. Walla examined the plaintiff and ordered x rays of his lumbar spine. The x rays showed a narrowed L5 disk space, which Dr. Walla diagnosed as a degenerative fifth lumbar disk with degenerative arthritis of the lumbosacral spine. Although Dr. Walla acknowledged that plaintiff also suffered from chronic back strain, he testified that the plaintiff's problem was "more of a problem with a degenerative disk disease."

In addition to x rays, plaintiff had a CAT scan performed on his lumbar spine on May 9, 1988, a lumbar myelogram on May 26, 1988, and a CT scan on May 29, 1988. The myelogram showed a possibility of disk herniation at the L5-S1 level and a bulge of the annulus posteriorally at the L3-4 level. The CT scan revealed a calcified disk at the L5-S1 level and some bulging calcification at the L4-5 level. When Dr. Walla's treatment proved ineffectual, he referred the plaintiff to Dr. H. Randal Woodward, a specialist in orthopedic surgery in Omaha.

Dr. Woodward testified by deposition that the plaintiff had related a different date to him as to when the plaintiff's back pain arose. According to Dr. Woodward, the plaintiff stated that in March 1988, not May 1988, he began to feel back pain after slamming on the brakes. Dr. Woodward found, after he had examined the plaintiff and reviewed the diagnostic tests performed by Dr. Walla, that the plaintiff's back problems had

probably existed in plaintiff's back for some time and that it was impossible to determine how long they had taken to develop to the extent of the calcification which was evident. Dr. Woodward explained that at least a year before the CT scan was taken, calcium was building up in the plaintiff's lumbar spine.

An MRI scan was performed in January 1989, which identified further problems in plaintiff's lumbar spine. The MRI scan disclosed disk herniations at L1-2, L3-4, and L4-5. Dr. Woodward stated that plaintiff's back problems, as evidenced by the MRI scan, existed at least since March 1988 and probably even predated March 1988. Further, Dr. Leonard Weber, a neurosurgeon who also examined plaintiff and the diagnostic tests conducted by Dr. Walla, testified by deposition that the MRI scan disclosed changes of loss of water in the disks at the L4 and L5 levels and in the first sacral vertebra, which is a very common change occurring in degenerating disks.

The plaintiff relied upon the medical testimony of Dr. Walla to connect his back condition to his employment. Dr. Walla, who was the plaintiff's treating physician until June 30, 1989, testified by deposition that the injury to plaintiff's right leg caused him to alter his normal walking gait, which in turn put stress on his lower back and consequently aggravated a lower back injury which he suffered on September 16, 1984. In addition thereto, Dr. Walla testified that the plaintiff's back condition was further aggravated by work activities he performed in the course of his employment with Hendricks, specifically the alleged May 1, 1988, braking incident and/or the May 2, 1988, truck-exiting incident.

The opinion of an expert witness is not binding on the trier of fact. *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985); *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985); *Hamer v. Henry*, 215 Neb. 805, 341 N.W.2d 322 (1983). As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Canas v. Maryland Cas. Co.*, *ante* p. 164, 459 N.W.2d 533 (1990); *Brazee v. City of Lincoln*, 234 Neb. 680, 452 N.W.2d 529 (1990). Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court

from substituting its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the findings made by the Workers' Compensation Court. *Mutual of Omaha v. Broussard*, 233 Neb. 916, 448 N.W.2d 600 (1989); *LaPage v. City of Lincoln*, 233 Neb. 576, 446 N.W.2d 738 (1989); *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988).

In regard to the plaintiff's altered gait, neither Drs. Woodward and Weber, who each examined the plaintiff on two occasions, nor Dr. Walla ever recorded any gait problems. In fact, each physician noted that the plaintiff had a normal gait and only a slight weakness in his right thigh. In addition, Norman LeGrande, president of Hendricks, testified that after the plaintiff's accident on October 18, 1986, he did not see the plaintiff limp, nor did he observe any other abnormalities in the plaintiff's gait. Rod Brown, a coworker of the plaintiff's at Hendricks, also testified that he had the opportunity to observe the plaintiff on a daily basis after he returned to work and never saw him limping at any time.

Furthermore, the evidence surrounding the alleged work-related incidents which are claimed to have aggravated the plaintiff's preexisting back injury is at best equivocal and unconvincing. Dr. Walla testified by deposition that on May 2, 1988, when the plaintiff visited his office complaining of lower back pain, he never described to Dr. Walla the alleged May 1, 1988, braking incident or the alleged May 2, 1988, truck-exiting incident. Dr. Walla's records make absolutely no mention of either event.

Dr. Woodward testified by deposition that the plaintiff had related a different date to him as to when the plaintiff's back pain arose. According to Dr. Woodward, the plaintiff stated that in March 1988, not May 1988, he began to feel back pain after slamming on the brakes.

Dr. Michael Morrison, an orthopedic surgeon who examined the plaintiff, testified by deposition that the plaintiff related a different event to him as the source of plaintiff's back pain. According to Dr. Morrison, the plaintiff stated that on May 2, 1988, while plaintiff was getting off a dump truck, he began to feel back pain and that this event caused his present back

condition.

LeGrande testified at the hearing that the plaintiff's last day at work with Hendricks was April 28, 1988, some 2 or 3 days before plaintiff's alleged work-related accidents. Moreover, LeGrande testified that the plaintiff phoned him on May 8, 1988, and stated that he had injured his back and that he had not done it on the job.

Considering the above testimonial ambiguities and being mindful that the credibility of and the weight to be given to the testimony, and the issue of causation generally, are all matters of fact to be determined by the compensation court sitting as the finder of fact, we cannot say that the decision of the compensation court was clearly wrong. The compensation court simply found that the plaintiff had failed to meet his burden of proving that his back condition arose out of and in the course of his employment by the defendant Hendricks. The testimony of the plaintiff's witnesses which was equivocal, when considered together with the plaintiff's inconsistent descriptions of the events which led to his back pain, did not compel the fact finder to determine that the plaintiff had sustained a back injury as the result of an accident arising out of and in the course of his employment by the defendant Hendricks.

The judgment of the compensation court is, therefore, affirmed.

AFFIRMED.