Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/24/2020 08:07 AM CST

TRACY D. GANDARA-MOORE, APPELLANT, V.
MICHAEL E. MOORE, JR., APPELLEE.
___ N.W.2d ___

Filed November 17, 2020.    No. A-19-1110.

1. **Divorce: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.

2. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy or admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

3. **Court Rules: Waiver.** In appropriate circumstances where no injustice would result, a district court may exercise its inherent power to waive its own rules.

4. **Trial: Expert Witnesses: Appeal and Error.** It is within the trial court's discretion to admit or exclude the testimony of an expert witness, and a trial court's ruling in receiving or excluding an expert's opinion will be reversed only when there has been an abuse of discretion.

5. **Trial: Expert Witnesses.** The trial court is the sole judge of the credibility of a witness, and the opinion of any given expert witness is not binding on the trier of fact.

6. **Expert Witnesses: Trial.** A party generally must move to strike the testimony of an undisclosed expert witness or move for a continuance to gain more time to investigate the witness and secure rebuttal evidence.

7. **Visitation.** The trial court has discretion to set a reasonable parenting time schedule.

8. **Trial: Evidence: Witnesses: Appeal and Error.** All conflicts in the evidence, expert or lay, and the credibility of the witnesses are for the fact finder and not for the appellate court.

9. **Evidence: Appeal and Error.** Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

10. **Parent and Child.** If a parent has been found to have engaged in domestic intimate partner abuse, limits shall be imposed within the parenting plan that are reasonably calculated to protect the child or child's parent from harm.

11. **Child Support: Rules of the Supreme Court.** As a general matter, child support obligations should be set according to the provisions of the Nebraska Child Support Guidelines.

12. **Child Support.** Child support may be based on a parent's earning capacity when a parent voluntarily leaves employment and a reduction in that parent's support obligation would seriously impair the needs of the children.

13. **Child Support: Proof.** In calculating child support, a parent requesting a deduction for the amount he or she pays for his or her own health insurance, or a credit for the amount paid for a child's health insurance, must submit proof of the cost actually incurred for that portion of the health insurance.

14. **Property Division: Words and Phrases.** Dissipation of marital assets is generally defined as one spouse's use of marital property for a selfish purpose unrelated to the marriage at the time when the marriage is undergoing an irretrievable breakdown.

15. **Property Division: Proof.** The initial burden of proof is on the party alleging dissipation, and after sufficient evidence is produced, the burden shifts to the dissipating spouse to prove that the funds were spent for marital purposes.

16. **Contempt.** Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed as modified.

Stephen D. Stroh, of Bianco Stroh, L.L.C., and Ryan D. Caldwell, of Caldwell Law, L.L.C., for appellant.

Alex M. Lierz, of Rembolt Ludtke, L.L.P., for appellee.

Pirtle, Riedmann, and Arterburn, Judges.

Riedmann, Judge.

## INTRODUCTION

Tracy D. Gandara-Moore appeals from the order of the district court for Lancaster County that dissolved her marriage

to Michael E. Moore, Jr.; awarded custody, parenting time, and child support for their minor children; divided the marital estate; and found her in contempt of court. We find that the district court abused its discretion in failing to include a provision in the parenting plan to protect Tracy from harm, in calculating child support, and in dividing the marital estate. We therefore modify the court's order accordingly. We otherwise affirm.

## BACKGROUND

Tracy and Michael were married in March 2012, in Lincoln, Nebraska. Two children were born during the marriage: a daughter in 2012 and another daughter in 2014. Tracy filed a dissolution petition in August 2017, after an incident of domestic violence perpetrated by Michael. Tracy was granted temporary custody of the children in January 2018. Michael was ordered to pay $1,061 per month in child support, and each party was to pay half of all daycare costs and medical bills.

In June 2018, Michael, who had moved back to the east coast, filed a motion for parenting time. In July, the district court granted Michael parenting time on the "FaceTime" application twice a week for at least 30 minutes. The court also ordered Michael to meet with Dr. Michael Keady, the children's counselor, twice before exercising in-person parenting time. The court further stated that if Keady recommended in-person parenting time, Michael could have parenting time one weekend in August in Lincoln and parenting time from August 31 until September 4 in Washington, D.C.

In August 2018, the parties stipulated that Michael was in contempt of the January temporary order, as he had failed to pay $3,971.20 in daycare expenses. They agreed that he should be sentenced to 7 days in jail with the ability to purge his contempt by paying $300 per month until the outstanding expenses were paid. The court entered a stipulated order accordingly. Michael filed additional motions requesting parenting time in September, November, and March 2019. In

response to Michael's motions for parenting time, the district court again ordered that Michael was to have FaceTime parenting time twice a week. The court's notes from October 12, 2018, indicate Michael's parenting time was subject to the modification of a no-contact order that had been entered in his ongoing criminal case resulting from Tracy's allegations of domestic abuse. In September and November 2018, the county court for Lancaster County, in which Michael's criminal case was pending, noted that Michael's bond could be amended to allow him to have FaceTime visitation with the children, consistent with the district court's order.

Michael filed a motion with the district court in March 2019, requesting that Tracy show cause as to why she should not be held in contempt for withholding parenting time. According to Michael's motion, he had not had any FaceTime visitations with his children since the court ordered it in October 2018 and he had not spoken to his daughters since the previous summer. In June 2019, Tracy filed an affidavit requesting sanctions for Michael's failure to comply with the purge plan ordering him to make monthly payments for past daycare expenses.

As referenced above, while the dissolution case was pending, Michael was charged in the county court for Lancaster County with domestic assault in August 2018. Michael was arrested on the same day as the charges were filed, and his appearance bond ordered him to have no contact with Tracy. Following a trial in June 2019, he was convicted of domestic assault and placed on probation.

A trial was held on Tracy's complaint for dissolution, Michael's order to show cause, and Tracy's request for sanctions. The trial spanned 3 days in May, June, and September 2019. During the trial, Tracy testified and presented evidence regarding her relationship with Michael. She stated that Michael started verbally abusing her shortly after they were married. Michael became more violent during the marriage, and physically abused her "four or five" times. The last assault occurred in July 2017, when Michael punched her in the face, held

her against her will in the garage, strangled her, and threatened to kill her and kidnap their children. After the assault, Michael left Nebraska and returned to the east coast.

Tracy filed for a protection order after the assault, and she indicated on the form that she was not requesting that Michael be prohibited from contacting or communicating with her so that he could call the children. Tracy further indicated that she made "[h]undreds and hundreds" of attempts to communicate with Michael after he left, but Michael refused to answer his phone and had only random communication with the children.

According to Tracy, after the district court ordered Michael to have FaceTime parenting time with the children, she attempted to facilitate calls between him and the children until August 15, 2018, when a no-contact order was put in place as a condition of his appearance bond in the domestic assault case. She stated that she spoke to a prosecutor who informed her that the no-contact order "trumped" any civil order that was in place; therefore, she was unable to facilitate visitation between Michael and the children. The appearance bond was modified in September and November to allow Michael to have contact with the children consistent with the district court's order.

Tracy stated that Keady, the children's therapist, was willing to facilitate parenting time between Michael and the children after the appearance bond was modified. However, Keady testified that it was his recommendation that any parenting time between Michael and the children be therapeutic. Keady stated that he met with the children four or five times and that they met the criteria for a post-traumatic stress disorder diagnosis. Keady also indicated that he met with Michael and the children in August 2018, that the children asked why Michael had not apologized to Tracy, and that Michael did not respond. Despite Keady's offer to facilitate therapeutic visitation, he stated that Michael did not accept the offer. Keady further opined that Tracy was an appropriate and protective mother.

Tracy also testified regarding her employment and income, the children's health and education, and her continued fear of Michael. She stated that at the time of trial, she was unemployed and had been since January 2019. Tracy worked for a health insurer from 2016 to 2018, earning about $58,000 per year. She explained that she left the job because she could not keep up with the demands of the job while she was a single parent. She indicated that she receives $400 per week in unemployment benefits and that she was applying for 5 to 10 jobs per week. Tracy also testified that she was injured in a car accident in June 2019 and her injuries impacted her ability to look for work.

Tracy informed the court that the children attend a private school and daycare in Lincoln and are doing very well. She indicated that the children were significantly delayed in speech and language when she registered them for preschool but that they have made great progress under her care. According to Tracy, the older child has an autoimmune disease which requires frequent hospitalizations and requires a complicated treatment when she becomes sick, which Michael was not aware of. Tracy also stated that she remained in fear of Michael and believed that he would eventually try to kill her.

Finally, Tracy testified regarding the parties' marital assets. She stated that she had cashed out her retirement account from her prior employment to pay her bills. She explained that the parties had numerous debts, including a loan which was used to pay basic living expenses during the marriage. Tracy stated that a portion of an inheritance that Michael received during the marriage was placed in her account to pay bills and that the money had been spent. She further indicated that Michael had not made all of the payments he was ordered to make for daycare expenses, nor had he paid his half of the unreimbursed medical expenses for the children. Tracy did not request alimony, but did request approximately $5,000 in attorney fees. She also requested that any parenting time that Michael receive be therapeutic.

In his case in chief, Michael testified about the domestic assault, as well as his attempts to have parenting time with the children. He disputed Tracy's account of the assault and stated that he did not punch her. However, Michael acknowledged that he was found guilty of domestic assault by the county court and was placed on probation.

Michael indicated that the last telephonic parenting time he had was in March 2019 and that he had not had any other telephonic parenting time since the beginning of 2018. He stated that it was difficult to call his children because of the restraining orders and that when he did call, Tracy called the police on him. Michael also informed the court that he attended a therapeutic parenting session with his children facilitated by Keady, but that the session lasted only 15 minutes and Tracy was in the room during the session. Michael stated that he underwent an evaluation by Dr. Rick McNeese in October 2018 to demonstrate that he was ready for parenting time. Issues regarding McNeese's testimony and report will be laid out in greater detail in the analysis section below.

Michael provided testimony about the marital estate and the care he provided for the children during the marriage. He stated that Tracy controlled the family's finances and that he was not included in the financial decisions. He stated that he received an inheritance and that $5,800 of it was placed into an account controlled by Tracy to be used for medical bills, but she used the money for other purposes. Michael also testified that he provided health insurance for the children and that he did not believe that the older child was as sick as Tracy made her out to be. Michael testified that he was a stay-at-home father during the marriage and was not aware of any concerns about his parenting.

In October 2019, the district court dissolved the parties' marriage and awarded Tracy legal and physical custody of the children. Michael was granted parenting time of one weekend per month in Lincoln; parenting time alternating during either the children's spring break or winter break in

Maryland, Virginia, or Washington, D.C.; and two periods of two consecutive weeks of parenting time in the summer in Maryland, Virginia, or Washington, D.C. The district court also held Tracy in contempt for withholding parenting time. The court created a purge plan, ordering Tracy to pay $2,500 in attorney fees to Michael.

The court calculated Michael's child support payments using Tracy's previous earnings of $58,000 per year. The court ordered Michael to pay $691 per month in child support for two children and $426 per month for one child. It adopted Michael's division of the marital estate, which indicated that Tracy had dissipated $5,800 from Michael's inheritance. Accordingly, Michael was ordered to pay an equalization payment in the amount of $7,590.39 to Tracy. Finally, the court ordered each party to pay their own attorney fees. Tracy timely appealed.

## ASSIGNMENTS OF ERROR

Tracy assigns, reordered, consolidated, and restated, that the district court erred in (1) admitting a nondisclosed exhibit and allowing a nondisclosed witness to testify, (2) fashioning a vague parenting plan that was not in the children's best interests and did not include safety provisions, (3) calculating child support, (4) dividing the marital estate, (5) finding her in contempt, and (6) not awarding her attorney fees.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*.

[2] A trial court has the discretion to determine the relevancy or admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of

that discretion. *Hartley v. Metropolitan Util. Dist.*, 294 Neb. 870, 885 N.W.2d 675 (2016).

## ANALYSIS

*McNeese's Testimony and Report.*

Tracy argues that Michael did not disclose McNeese as an expert witness nor list his report as an exhibit on Michael's pretrial memorandum; therefore, the district court abused its discretion in allowing McNeese to testify and in admitting his report into evidence. We disagree.

In his pretrial memorandum, Michael acknowledged that "[h]e will not be permitted to call witnesses, present exhibits or otherwise produce any evidence unless the witness, exhibit, property and issue timely appear in this Exhibit . . . ." He did not list McNeese as a witness, nor did he list McNeese's report as an exhibit to be offered. Nevertheless, McNeese was allowed to testify at trial, over Tracy's objection, and his report was received into evidence. Tracy asserts that the court violated Rules of Dist. Ct. of Third Jud. Dist. 3-9(D) (rev. 2019), which governs a party's responsibilities for disclosing witnesses and exhibits in a pretrial memorandum.

[3,4] The Nebraska Supreme Court has recognized that in appropriate circumstances where no injustice would result, a district court may exercise its inherent power to waive its own rules. *Kibler v. Kibler*, 287 Neb. 1027, 845 N.W.2d 585 (2014). Further, it is within the trial court's discretion to admit or exclude the testimony of an expert witness, and a trial court's ruling in receiving or excluding an expert's opinion will be reversed only when there has been an abuse of discretion. *Zarp v. Duff*, 238 Neb. 324, 470 N.W.2d 577 (1991). Thus, our analysis of whether the district court abused its discretion in allowing McNeese to testify and admitting his report into evidence turns on whether or not Tracy was prejudiced by the ruling. We find that she was not.

[5] In awarding Michael parenting time, the district court relied on McNeese's report. McNeese's report indicated that

Michael showed no evidence of a major emotional disorder, thought disorder, personality disorder, or substance abuse disorder and that he did not appear to have various factors found in angry and impulsive individuals. McNeese supported Michael's request for parenting time. His conclusions were in contrast to Keady's testimony that Michael should have only therapeutic visitation with the children. Thus, Tracy alleges that she was prejudiced by McNeese's testimony and report because the district court relied on it instead of on Keady's assessment. We reject this assertion because the trial court is the sole judge of the credibility of a witness and the opinion of any given expert witness is not binding on the trier of fact. See *Way v. Hendricks Sodding & Landscaping, Inc*., 236 Neb. 519, 462 N.W.2d 99 (1990). Therefore, the fact that the district court accepted McNeese's opinion over that of Keady does not support a finding of prejudice.

It appears from the discussion that occurred prior to McNeese's testimony that his report had been provided to opposing counsel and the court at a hearing more than 6 months before trial. Tracy was allowed to cross-examine and voir dire McNeese at trial, and she did so, pointing out that he made his evaluation without ever having met with the children or Tracy. According to McNeese, however, a meeting was scheduled with the children, but they did not appear. Tracy does not assert how her trial preparation would have differed had McNeese been timely disclosed.

Under similar circumstances, the Supreme Court allowed an undisclosed expert witness to testify when there was no showing that the appellant's preparation for trial was hampered by the untimely disclosure of the witness. See *Nixon v. Harkins*, 220 Neb. 286, 369 N.W.2d 625 (1985). Likewise, here, Tracy has not demonstrated how her preparation for trial was hampered by Michael's late disclosure. Under the circumstances of this case, it cannot be said that Tracy was prejudiced by the district court's decision to receive the evidence.

[6] We recognize that a party generally must move to strike the testimony of an undisclosed expert witness or move for a continuance to gain more time to investigate the witness and secure rebuttal evidence. See *Kirkwood v. State*, 16 Neb. App. 459, 748 N.W.2d 83 (2008). Here, Tracy did neither. However, the district court received the evidence subject to Tracy's objection, stating it would take the objection under advisement. It did not rule on its admissibility until entering its order after trial was concluded. The Supreme Court has condemned such practice, stating that "appropriate judicial trial practice requires that trial judges rule on matters submitted to them in a timely fashion in order that the litigants be in a position to react to the ruling." *Phillips v. Monroe Auto Equip. Co.*, 251 Neb. 585, 594, 558 N.W.2d 799, 805 (1997).

Accordingly, because the district court failed to rule on the objection when made, Tracy's failure to seek a continuance or move to strike does not preclude her ability to raise the issue on appeal. However, because Tracy was not prejudiced by the untimely disclosure, we find no abuse of discretion by the district court.

*Parenting Plan.*

Tracy asserts that the district court erred in awarding Michael significant parenting time. She specifically argues that the court erred in relying on McNeese's report, disregarding Keady's opinion, failing to consider the children's best interests, failing to include adequate domestic violence protections, and including a vague and ambiguous transition plan. We agree that the district court failed to include adequate protections from domestic violence for Tracy, as required by Neb. Rev. Stat. § 43-2932 (Reissue 2016). We otherwise affirm the provisions of the parenting plan.

[7] The trial court has discretion to set a reasonable parenting time schedule. *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016). The determination of reasonableness is to be made on a case-by-case basis. *Id*. Parenting time relates to continuing and fostering the normal parental relationship

of the noncustodial parent. *Id*. The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights. *Id*. The best interests inquiry has its foundation in both statutory and case law.

Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) provides that in determining custody and parenting arrangements:

[T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member[;] and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

In addition to these factors, the Supreme Court has previously held that in determining a child's best interests, courts

"'may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension regardless of chronological age, and when such child's preference

for custody is based on sound reasons; and the general
health, welfare, and social behavior of the child.'"
*Davidson v. Davidson*, 254 Neb. 357, 368, 576 N.W.2d 779,
785 (1998).

Here, the district court awarded Tracy legal and physical
custody of the children. Michael was granted parenting time
one weekend a month in Lincoln, beginning Friday evening and
ending Sunday evening, as well as parenting time in his home
state during either the children's spring break or winter break
and during their summer break. At trial, Tracy argued that
Michael should be granted only therapeutic parenting time with
the children. On appeal, she makes similar arguments.

Tracy first asserts that the district court erred in relying on
McNeese's report in awarding Michael "substantial parenting
time." Brief for appellant at 30. Tracy argues that there are
numerous flaws in McNeese's report that the district court
did not consider. McNeese's report indicated that Michael
showed no evidence of a major emotional disorder, thought
disorder, personality disorder, or substance abuse disorder
and that he did not appear to have various factors found in
angry and impulsive individuals. McNeese concluded that
the absence of such evidence supported Michael's request for
parenting time.

Tracy argues that McNeese met with Michael only twice;
further, she argues that his report does not analyze Michael's
criminal case or the domestic abuse protection order, the chil-
dren's current feelings toward Michael, Michael's departure
from the marital home, or his failure to participate in fam-
ily therapy. Tracy contends that the court's error in relying
on McNeese's report is exacerbated by Keady's opinion that
Michael and the children needed to engage in therapeutic
visitation to address the various issues in their relationship,
because Keady met with Tracy, the children, and Michael.

[8] Tracy's argument is that Keady's opinion conflicted
with that of McNeese and was more credible. However, all
conflicts in the evidence, expert or lay, and the credibility of

the witnesses are for the fact finder and not for the appellate court. See *Pierce v. Landmark Mgmt. Group*, 293 Neb. 890, 880 N.W.2d 885 (2016). The district court heard Keady's testimony, as well as that of Tracy and Michael; read McNeese's report; and then determined that it was in the children's best interests to award Michael parenting time in both Lincoln and his home state. Based on the record, this was not an abuse of discretion.

Tracy further asserts that the district court did not consider the children's physical health or emotional well-being in developing the parenting plan. She argues that the court did not properly consider Michael's "purposeful denial of exercising FaceTime parenting time offered to be facilitated by . . . Keady." Brief for appellant at 31. As we explain in greater detail below, Keady testified that he offered to provide therapeutic parenting time for Michael; however, the district court did not order therapeutic parenting time. Michael testified that he had parenting time with the children only twice since the beginning of 2018. As a result, the district court determined that Tracy was in contempt of multiple court orders granting Michael parenting time. Therefore, the court did not fail to consider Michael's lack of parenting time with the children.

Tracy alleged both at trial and on appeal that the older child has an autoimmune issue that requires many hospitalizations and a respiratory distress plan to be implemented. Michael testified that he did not think the older child's health was as poor as Tracy represented it to be.

[9] Tracy argues that it is an abuse of discretion to require the older child to fly on a plane and visit with a parent unfamiliar with her health conditions. However, where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014). There is nothing before us to indicate that the district court failed to consider the older

child's health condition before granting Michael parenting time in his home state.

Tracy also asserts that the district court failed to ensure that there were measures in place to protect her and the children from domestic abuse. We agree.

[10] Section 43-2932 states that if a parent has been found to have engaged in domestic intimate partner abuse, limits shall be imposed that are reasonably calculated to protect the child or child's parent from harm. These limitations may include limits on the exchange of the child, restraints on the parent from communication with the other parent or child, and any other constraints or conditions deemed necessary to provide for the safety of the parent or child. See § 43-2932(1)(b). The parent found to have engaged in domestic abuse has the burden of proving that having access to parenting time will not endanger the child or other parent. See § 43-2932(3).

Here, the district court expressly found that Michael assaulted Tracy. Although the court noted that the parties disputed the severity of the assault, the court still made a finding that an assault occurred. Despite this finding, the court did not include any provisions in the parenting plan providing for the safety of Tracy or the children. When there is a finding of domestic intimate partner abuse, as happened here, the obligations of § 43-2932 are mandatory. See *Fales v. Fales*, 25 Neb. App. 868, 914 N.W.2d 478 (2018). See, also, *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015). The district court abused its discretion in failing to comply with § 43-2932 by not imposing adequate limitations in the parenting plan to protect Tracy from abuse.

Based on our review of the record, adequate limitations should be imposed to protect Tracy. There is currently a protection order in place which the district court modified to allow Michael to pick up and return the children from both Tracy's home and the children's school. However, at trial, Tracy testified that she feared for her safety around Michael and believed he would try to kill her. Therefore, to provide for Tracy's safety, we modify the exchange location for

parenting time to require that exchanges occur at a mutually agreed-upon public location. If the parties cannot agree on a transfer location, exchanges that otherwise would occur at Tracy's house are to occur at the Lancaster County sheriff's office in Lincoln on North 10th Street. We acknowledge that the parenting plan requires Michael to provide transportation for the children at the start and end of his parenting time; however, given Tracy's safety concerns, we modify that portion of the court's order as set forth above.

Tracy additionally asserts that the court's parenting plan contained vague provisions in that it did not define "evening," when it ordered that Michael's parenting time was to run from Friday evening until Sunday evening. We disagree. Because Michael is required to travel to Lincoln from his home on the east coast, it would be difficult for the court to order his parenting time to begin and end at a certain time. While it may have been preferable to provide a window of time during which Michael was to pick up and return the children, under the circumstances, we cannot find that the court's use of "evening" constitutes an abuse of discretion.

*Child Support Calculation.*

Tracy asserts that the district court abused its discretion in using her previous income of $58,000 per year to calculate child support. We disagree.

[11,12] As a general matter, child support obligations should be set according to the provisions of the Nebraska Child Support Guidelines. *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007). In determining income, the court may use earning capacity in lieu of a parent's actual, present income. See Neb. Ct. R. § 4-204(E) (rev. 2016). Child support may be based on a parent's earning capacity when a parent voluntarily leaves employment and a reduction in that parent's support obligation would seriously impair the needs of the children. *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004).

Here, the district court adopted Michael's proposed child support calculation. In doing so, the court held Tracy to her

previous earning capacity of $58,000 and rejected her request to calculate child support using her unemployment benefits of $1,733.33 per month. The court determined that Tracy voluntarily left her employment where she earned $58,000 and that it would be inequitable to use her unemployment benefits to calculate child support. The record supports the district court's findings.

Tracy asserts that the district court erred in failing to consider the circumstances surrounding her voluntary termination of employment. She further argues that due to her car accident, she no longer has the capacity to earn $58,000. Tracy testified that in the June 2019 accident, she was driving and was "T-boned." She sustained a concussion, suffered a whiplash, and aggravated a preexisting disk degeneration in her spine and neck. She claimed that the injuries impacted her ability to look for work and to perform work. According to Tracy, she was scheduled for a consultation for a "neck fusion" in October. She presented no medical records or other documentation regarding her injuries.

Although Tracy testified that the June 2019 accident affected her ability to work, she voluntarily terminated her employment with the health insurance company in 2018. She worked for a short time at a psychiatric rehabilitation center, but was terminated in January 2019. She has remained unemployed since that date, attributing that situation to the car accident. The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. See *Omaha Police Union Local 101 v. City of Omaha*, 292 Neb. 381, 872 N.W.2d 765 (2015). Despite hearing Tracy's testimony, the court determined that it would be inequitable to use her unemployment benefits to calculate child support. We find no abuse of discretion in this determination.

Tracy also argues that the court incorrectly calculated her monthly income because it should have been calculated at $4,833.33, not $4,977.74. However, Tracy's most recent pay stub from her employment at the insurance company indicates that she earned $2,297.42 biweekly; therefore, considering

that Tracy was paid 26 times per year, her average monthly income equates to $4,977.74. Thus, the district court did not err in calculating her monthly income.

Tracy further alleges that the district court erred in attributing a health insurance deduction of $517 to Michael in its child support calculation. She argues that Michael's pay stubs indicate that he has only $278.50 deducted for health insurance, not the $517 he claims. We agree that the district court abused its discretion in calculating Michael's child support payment, because he did not submit proof of what portion of the medical insurance deduction was attributable to coverage for him and what portion was attributable to the children.

At trial, Michael testified that his paycheck generally was $1,648 for a 2-week pay period and that his net pay after health insurance, child support, and taxes were deducted was $852.73. Michael explained that he had $530.50 deducted from each paycheck for child support; thus, in his brief to this court, he stated that he paid $264.77 per paycheck in health insurance, which equates to $529.54 per month in health insurance. However, according to that calculation, Michael did not pay any taxes on his income. Exhibit 11 contains Michael's pay stubs, which he testified reflect his current income. His pay stubs indicate that he pays $128.54 per paycheck in health insurance for himself and the children. Michael indicated that he is paid every 2 weeks; thus, on average, he pays $278.50 per month in health insurance.

[13] Under the Nebraska Child Support Guidelines, a parent is entitled to a deduction for the amount he or she pays for his or her own health insurance. Neb. Ct. R. § 4-205(F) (rev. 2016). But, the parent requesting the deduction must submit proof of the cost actually incurred for his or her health insurance. *Id*. Likewise, a parent is entitled to a credit for the prorated portion of the health insurance cost he or she expends for the children when that parent submits proof of the cost of the children's health insurance. Neb. Ct. R. § 4-215(A) (rev. 2011).

Here, Michael did not submit proof of the cost of his medical insurance nor the medical insurance of the children. The evidence before us demonstrates that Michael paid $128.54 per paycheck, or $278.50 in insurance per month. His paycheck indicates that his insurance is for himself and the children. However, Michael did not present evidence indicating how much of the $128.54 he paid for health insurance went toward his own insurance and how much went toward the children's insurance. Thus, he did not submit adequate proof of the cost of his own insurance, nor adequate proof of the children's insurance. Accordingly, the district court abused its discretion in calculating Michael's child support payments using a deduction of $186.33 for his health insurance and applying a credit of $331 per month for the children's insurance. See *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001) (trial court erred in granting father deduction for health insurance without proof of how much of health insurance premium was attributable to children).

To remedy the district court's error, we delete Michael's deduction for health insurance on the child support worksheet, line 2.f, and his credit for health insurance for the children on the worksheet, line 8. Michael's net monthly income increases to $3,563.96, the parties' combined monthly income becomes $7,629, and their annual income increases to $91,548. Michael's monthly income increases to 46.72 percent, and Tracy's monthly income decreases to 53.28 percent. The monthly support from table 1 is $1,961, which brings Michael's share to $916 per month for two children and $640 per month for one child. The decree is modified to reflect these calculations.

*Division of Marital Estate.*

Tracy argues that the district court erred in dividing the marital estate because it improperly determined that she dissipated $5,800 from Michael's inheritance. We agree.

[14,15] Dissipation of marital assets is generally defined as one spouse's use of marital property for a selfish purpose unrelated to the marriage at the time when the marriage is

undergoing an irretrievable breakdown. *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). As a remedy, marital assets dissipated by a spouse should be included in the marital estate in dissolution actions. *Anderson v. Anderson*, 27 Neb. App. 547, 934 N.W.2d 497 (2019). The initial burden of proof is on the party alleging dissipation, and after sufficient evidence is produced, the burden shifts to the dissipating spouse to prove that the funds were spent for marital purposes. See *Schnackel v. Schnackel*, 27 Neb. App. 789, 937 N.W.2d 234 (2019) (citing *Harris v. Harris, supra*, and *Brunges v. Brunges*, 260 Neb. 660, 619 N.W.2d 456 (2000)).

The district court accepted Michael's proposed division of marital assets, which included $5,800 from his inheritance which Tracy allegedly dissipated. In its order, the court stated that half of Michael's inheritance was deposited into Tracy's account to pay for medical bills. The deposit of the money is corroborated by Tracy's and Michael's testimony and exhibit 17, which is an account summary for Tracy's bank account. However, Michael claims that the money was deposited for the purpose of paying medical bills and that Tracy failed to pay those bills. Tracy disputes the purpose for which the money was deposited. Regardless, neither Michael's testimony, nor exhibit 17, demonstrates that Tracy used the $5,800 for purposes unrelated to the marriage. Exhibit 17 indicates that Tracy used the funds to pay various bills and to pay for insurance, food, and clothing. Although Michael indicated that the money was used for a purpose other than that for which it was given to Tracy, the standard for dissipation of marital assets is whether marital assets were used for a selfish purpose unrelated to the marriage, not whether the funds were used for a specified purpose.

In *Harris v. Harris, supra*, the husband began to make large withdrawals from the parties' savings account after the wife asked for a divorce. The husband was able to account, through testimonial and documentary evidence, for a portion of the withdrawals being used for marital expenses. *Id*. The

remaining portion of the withdrawals were unaccounted for, and the court determined that portion, not the portion used for marital expenses, had been dissipated. *Id*. Likewise, in the present case, Tracy's testimony and the documentary evidence indicates that she spent the $5,800 on marital expenses, such as the parties' debts, insurance, cell phones, food, and clothing. Therefore, based on the record before us, the district court abused its discretion in finding that Tracy dissipated $5,800, because the documentary evidence does not indicate that she used the money for selfish purposes unrelated to the marriage.

To remedy the court's error, $5,800 should not be attributed to Tracy, as demonstrated in exhibit 43, Michael's proposed division of assets. Rather, the total marital debts should remain at $20,980.78, which will result in an equalization payment by Michael of $10,490.39. Further, pursuant to the court's purge plan for Tracy's contempt of court, Michael's equalization payment of $10,490.39 is reduced by $2,500.

*Contempt.*

Tracy also alleges that the district court erred by finding her to be in contempt of various court orders regarding Michael's FaceTime parenting time. We find no error in the district court's finding.

[16] Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally with knowledge that the act violated the court order. *Id*. Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence. See *id*.

The district court found that Tracy willfully and contumaciously violated the court's orders that Michael was to have

parenting time via FaceTime with the children. In three separate orders, the district court ordered FaceTime parenting time. Despite these orders, the evidence demonstrates that at the time of trial, Michael had not had parenting time with the children since March 2019 and had only had one other visitation with the children since the beginning of 2018.

Tracy testified that she did not believe she could communicate with Michael due to a no-contact order which was put in place by the county court for Lancaster County; therefore, she could not facilitate the FaceTime calls. However, the appearance bond that implemented the no-contact restriction in August 2018 was modified in September and November to allow Michael FaceTime visitation with the children, following an October 12 order from the district court to allow FaceTime visitation. The district court ordered FaceTime visitation again on October 25 and November 16, as well as on March 18, 2019. In light of these orders and the initial July 2018 order granting Michael FaceTime visitation with the children "by calling [Tracy]," we find Tracy's position questionable at best.

Tracy testified that after the no-contact order was modified, she arranged for Keady to facilitate FaceTime therapeutic visitation for Michael with the children. However, the district court's orders did not require Michael's parenting time to be therapeutic. Tracy's position requiring therapeutic parenting time undermines her argument that she did not willfully violate the court's orders. After reviewing the evidence, we agree that Tracy willfully and contumaciously violated the court's orders by withholding FaceTime parenting time from Michael.

*Attorney Fees.*

Tracy asserts that the district court abused its discretion in failing to award her attorney fees. We disagree.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of

attorney fees. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019). In dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. *Id*. In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id*.

Both Tracy and Michael requested the district court to award attorney fees. Apart from the fees Tracy was ordered to pay as part of the court's contempt finding, the court ordered each party to pay his or her own attorney fees. After reviewing the record, we find no abuse of discretion by the district court in denying Tracy attorney fees. Each party incurred significant attorney fees, each party prevailed on some issues, and each party was unsuccessful on others. Consequently, the court did not abuse its discretion in refusing to award Tracy attorney fees.

## CONCLUSION

For the reasons set forth above, the district court's decree is modified to increase Michael's equalization payment to $10,490.39, from which shall be deducted $2,500 as contempt sanctions against Tracy. The decree is further modified to increase Michael's child support payments to $916 per month for two children and $640 per month for one child. Finally, the decree is modified to provide that parenting time transitions are to occur at an agreed-upon public place, not at Tracy's house, and that if the parties cannot agree on a place, they are to occur at the Lancaster County sheriff's office. The decree is otherwise affirmed.

Affirmed as modified.